**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 08-4529**

───────────────

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

    v.

ALI ASAD CHANDIA, a/k/a Abu Qatada,

                Defendant - Appellant.

───────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:05-cr-00401-CMH-1)

───────────────

Argued: December 2, 2009        Decided: September 14, 2010

───────────────

Before MICHAEL, MOTZ, and KING, Circuit Judges.

───────────────

Vacated and remanded by unpublished per curiam opinion.

───────────────

**ARGUED:** Marvin David Miller, Alexandria, Virginia, for Appellant. John T. Gibbs, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Heather Golias, LAW OFFICES OF MARVIN D. MILLER, Alexandria, Virginia, for Appellant. Chuck Rosenberg, United States Attorney, Alexandria, Virginia, for Appellee.

───────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Ali Asad Chandia was convicted of three counts of providing material support to terrorists and a terrorist organization. We previously affirmed his convictions but remanded for resentencing. United States v. Chandia, 514 F.3d 365 (4th Cir. 2008). We instructed the district court on remand to resolve Chandia's objections to his presentence report ("PSR") that were relevant to the sentencing enhancement he received under U.S.S.G. § 3A1.4 for committing a "federal crime of terrorism." Id. at 376. That enhancement applies only if the government proves that Chandia's conviction is a "felony that involved, or was intended to promote, a federal crime of terrorism." U.S.S.G. § 3A1.4(a).

Although it may seem at first blush that a terrorism-related conviction like Chandia's is naturally a "federal crime of terrorism," Congress chose a more narrow, motivation-based definition. A "federal crime of terrorism" is a violation of one of many statutorily enumerated offenses and is "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5). The "calculated to influence or affect" element of the definition imposes a specific intent requirement that a sentencing court must find before applying the

2

enhancement.  Chandia, 514 F.3d at 376; United States v. Stewart, 590 F.3d 93, 137-39 (2d Cir. 2009).

At resentencing the district court again concluded that Chandia deserved the terrorism enhancement, but the court also again did so without resolving relevant factual disputes in the PSR and without explaining how the facts it did find related to Chandia's motive for providing material support to the terrorist organization Lashkar-e-Taiba ("LET").  Because the court did not follow our instructions at resentencing, we again vacate Chandia's sentence and remand for further factfinding on whether Chandia had the intent required for the enhancement.

I.

A.

In June 2006 a jury in the Eastern District of Virginia convicted Chandia of three counts of terrorism-related crimes:  (1) conspiracy to provide material support to terrorists, in violation of 18 U.S.C. § 371 and § 2339A; (2) conspiracy to provide material support to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B; and (3) provision of material support to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B.  J.A. 582.

Chandia's conviction stemmed from an investigation of a terrorist support network in the Washington, D.C., suburbs. Chandia, 514 F.3d at 369. Many of the individuals investigated, including Chandia, were members of the Dar al-Arqam Islamic Center in Falls Church, Virginia. Id. Ali Timimi, a lecturer at the center, advocated violent jihad against perceived enemies of Islam. Id. In May 2003 the FBI executed warrants to search six residences, including Chandia's, on the basis that several members of the center regularly played paintball to prepare for violent jihad. Id. The FBI also believed that some of the individuals targeted, including Chandia, had traveled to Pakistan to attend military training camps run by LET. Id. The United States had designated LET as a foreign terrorist organization in December 2001. Id.

In June 2003 all of the individuals targeted in the searches, except for Chandia, were indicted for different offenses arising from the paintball activity. Id. at 370. Chandia did not participate in paintball. J.A. 596. He was indicted separately in September 2005 on four counts: one substantive and one conspiracy count of providing material support to terrorists, and one substantive and one conspiracy count of providing material support to a foreign terrorist organization. Id. The jury acquitted Chandia of the

substantive count of providing material support to terrorists and convicted him on the remaining three counts. Id.

Before Chandia's first sentencing hearing, the United States Probation Office prepared a PSR. J.A. 581. The PSR recommended the "federal crime of terrorism" sentencing enhancement under U.S.S.G. § 3A1.4(a). J.A. 613. Without the enhancement, the Guidelines provided a base level of 63 to 78 months. Chandia, 514 F.3d at 370. Application of the enhancement would have increased Chandia's Guidelines range to 360 months to life. Id. Chandia's material support convictions satisfied the first element required for the enhancement (conviction of an enumerated felony). Id. at 376. But the PSR said nothing about the second element -- specific intent. It simply concluded that Chandia's material support convictions "meet the requirements" for the terrorism enhancement, without any discussion of Chandia's motive. J.A. 613.

In describing the offense conduct, the PSR said that some time between September 11, 2001, and November 2, 2001, Chandia quit his job and left the United States for a family emergency. J.A. 604. The PSR further asserted that Chandia arrived in Lahore, Pakistan, in November 2001, visited a LET office, and inquired about the training that occurred at the LET military camp and what type of clothing was necessary. J.A. 605. However, the PSR did not assert that Chandia actually went

5

to a LET training camp while he was in Pakistan. Chandia, 514 F.3d at 370.

The PSR also said that between February 2002 and April 2003, Chandia provided assistance to Mohammed Ajmal Khan, a LET leader. J.A. 605-07. In particular, Chandia served as Khan's contact and transported him when Khan arrived in Washington, D.C. from Birmingham, England in February 2002. J.A. 605-06. Chandia took Khan to the residence of Khwaja Mahmood Hasan, where Khan allegedly indicated in Chandia's presence that he was in the U.S. on LET business. J.A. 606. The PSR indicates that Khan sent emails during his February 2002 visit to two technology companies for the purpose of ordering the anti-ballistic material Kevlar and remote-controlled aircraft equipment. J.A. 605-07. The PSR notes that fragments of one of these emails from Khan were recovered from a computer at Chandia's residence. J.A. 612. The government contended that Chandia gave Khan access to Chandia's computer during Khan's visit. Chandia, 514 F.3d at 370. The PSR also said that Chandia delivered twenty-one boxes of paintballs to an international shipping company for delivery to Lahore, Pakistan in March 2003. J.A. 610. Chandia allegedly paid for the shipment costs. J.A. 610-11.

Prior to his first sentencing, Chandia submitted detailed objections to the PSR. J.A. 350-62. Among his

6

objections was that the PSR gave no explanation of why the terrorism enhancement applied other than stating that his convictions "meet the definition" of a federal crime of terrorism, thus suggesting that the enhancement applies automatically to a material support conviction. J.A. 362, 613. Chandia admitted that he was in Pakistan from November 2001 to February 2002 but claimed that he was there to care for his ill father and to prepare for his brother's wedding. Chandia, 514 F.3d at 370. Although Chandia knew of LET's terrorist purposes, he maintained that LET also engaged in non-terrorist activity such as the operation of schools and hospitals. J.A. 356. Chandia also admitted to transporting Khan, but he denied knowing that Khan was in the United States on LET business. J.A. 360. Chandia argued that the computer that Khan used to order equipment did not belong to Chandia personally but rather was in Chandia's residence and was used by multiple family members. J.A. 361. Chandia admitted that he helped Khan ship approximately 50,000 paintballs to Pakistan, but denied purchasing or "clearing" the shipment. Appellant's Br. 10.

At Chandia's first sentencing hearing in August 2006, the government sought application of the § 3A1.4(a) terrorism enhancement. The district court did not explicitly say that the terrorism enhancement applied. Chandia, 514 F.3d at 371. However, on Chandia's first appeal, we concluded that the court

7

implicitly applied the enhancement when it determined that the Guidelines range was properly calculated at 360 months to life. Id. The court sentenced Chandia to 180 months' imprisonment, the statutory maximum for a single material support conviction. Id. The court did not resolve the factual disputes in Chandia's objections to the PSR. Id.

In January 2008 we affirmed Chandia's convictions but vacated his sentence and remanded for resentencing because (1) the PSR provided no explanation as to why the terrorism enhancement applied and (2) the district court did not resolve the factual disputes arising from Chandia's PSR, as required by Federal Rule of Criminal Procedure 32(i)(3)(B). In particular, the court did not make any factual findings regarding whether Chandia committed the offense with intent to "influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." Chandia, 514 F.3d at 376. Most importantly, we rejected the contention that the § 3A1.4(a) terrorism enhancement "automatically applies to a material support conviction." Id. We emphasized that unlike cases in which the underlying conviction involves violence, the facts of Chandia's conviction (including his assistance to Khan by shipping paintballs to Pakistan) did not alone "give rise to an automatic inference of the required intent." Id. We instructed the district court to reconsider whether the

8

enhancement applied by determining whether Chandia had the requisite intent. Id. In making this determination, we instructed the court to "resolve any factual disputes that it deems relevant to the application of the enhancement" under Federal Rule of Criminal Procedure 32(i)(3)(B). Id. If the court remained convinced that the enhancement applied, we asked the court to "identify the evidence in the record that supports its determination." Id.

B.

On remand Chandia's PSR remained unchanged and Chandia did not file a new set of objections. J.A. 581. At the resentencing hearing in April 2008, Chandia's counsel did, however, remind the district court of his previously filed objections and went on to argue why the enhancement should not apply. J.A. 547-57, 566-72. The court concluded that regardless of whether the government had to prove Chandia's specific intent by a preponderance or by clear and convincing evidence, the enhancement applied.[1] J.A. 573. The court relied upon the following facts in deciding that the enhancement

---

[1] As in our first decision in this case, we leave open the question of whether the government's burden of proof for the intent requirement under § 3A1.4 is a preponderance or clear and convincing. Chandia, 514 F.3d at 376 n.4.

9

applied: Chandia watched videos[2] of LET; he spent time in Pakistan and visited LET offices in Pakistan; he met with Khan, a "known leader of the LET"; he picked Khan up from the airport and his phone number served as Khan's contact; his computer was used to order Kevlar supplies from Canada; he took Khan to the airport to "make arrangements to buy other goods and military equipment"; and he helped ship paintballs to Pakistan. J.A. 573. In sum, the court found that Chandia "knew the purpose of the LET organization, clearly he knew it," and thus the terrorism enhancement applied. Id.

The court did not address Chandia's PSR objections in its oral disposition. In its accompanying Statement of Reasons the court indicated that it adopted the PSR without change. J.A. 642. Although the court applied the terrorism enhancement, it again sentenced Chandia to 180 months' imprisonment because the three counts of conviction were "part and parcel of conduct that was charged in all three offenses." J.A. 574.

---

[2] Although the district court used the word "videos," it appears that the court was referencing LET websites that Chandia allegedly visited. J.A. 294. Defense witness Husnain Awan testified that he and Chandia looked at websites containing information about LET's military operations in Pakistan. J.A. 293-94.

"If the district court makes adequate findings as to a controverted [sentencing] matter, this court must affirm those findings unless they are clearly erroneous." United States v. Morgan, 942 F.2d 243, 245 (4th Cir. 1991). However, the "review process cannot take place without the district court first resolving all the disputed matters upon which it relies at sentencing." Id. In this case, the district court did not follow our instruction to resolve factual disputes governing the terrorism enhancement it imposed. Nor did it "identify the evidence in the record that support[ed] its determination." Chandia, 514 F.3d at 376.

Federal Rule of Criminal Procedure 32(i)(3)(B) requires a sentencing court " -- for any disputed portion of the presentence report or other controverted matter -- [to] rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." A district court may satisfy Rule 32(i)(3) by "simply adopt[ing] the findings contained in a PSR, provided that [the court] makes clear 'which disputed issues were resolved by its adoption.'" Bolden, 325 F.3d at 497 (quoting Walker, 29 F.3d at 911). The court may adopt "the PSR's findings in toto" if "the context of the ruling makes clear that the district court intended [by the

11

adoption] to rule on each of the alleged factual inaccuracies."

Walker, 29 F.3d at 911 (holding that the district court's statement from the bench that it overruled the objections filed by the defendant, taken together with the court's Statement of Reasons form, satisfied Rule 32 because it demonstrated that the court was "adopting each of the PSR's findings") (emphasis added) (internal quotations omitted); see also United States v. Sykes, 357 F.3d 672, 674 (7th Cir. 2004) (holding that sentencing court may satisfy Rule 32(i)(3) by "adopting the proposed findings in the [PSR], even as to contested facts, so long as the PSR indicates a sufficiently clear basis for the sentence"). Compare United States v. West, 550 F.3d 952, 974 (10th Cir. 2008) (holding that simply adopting the PSR "without change" does not satisfy Rule 32); United States v. White, 492 F.3d 380, 415 (6th Cir. 2007) (holding that once a defendant "calls the [disputed] matter to the court's attention, the court may not merely summarily adopt the factual findings in the [PSR] or simply declare that the facts are supported by a preponderance of the evidence") (internal quotations and citations omitted).

In this case, after we vacated Chandia's original sentence and remanded for resentencing, the PSR remained unchanged. Therefore, the district court was left with a PSR that, as before, "stated that the terrorism enhancement applied

12

but gave no explanation for the conclusion." <u>Chandia</u>, 514 F.3d at 376. The PSR "did not contain any factual assertions . . . related to the intent element" of the terrorism enhancement. <u>Id.</u> The PSR's silence on intent triggered the sentencing court's factfinding duty under Rule 32(i)(3). At resentencing the court did not fulfill this duty when it simply adopted the PSR without change in its Statement of Reasons. This step did not satisfy our instruction (1) to "resolve any factual disputes that it deems relevant to application of the enhancement" and (2) if Chandia is found to "ha[ve] the requisite intent, [to] identify the evidence in the record that supports [that] determination." <u>Id.</u> Because it did not follow our instruction, the district court did not properly apply the enhancement.[3]

---

[3] We reject the government's suggestion that before his resentencing, Chandia should have requested a new PSR or should have stated more particularly why the PSR failed to support the terrorism enhancement. Chandia's counsel did not focus on the PSR during argument at resentencing but, as the hearing began, counsel reminded the court of Chandia's previously filed objections to the unchanged PSR. J.A. 547. In <u>Walker</u> we addressed whether the defendant objected to the PSR's recommendation that he be denied an adjustment for acceptance of responsibility in a manner sufficient to trigger the sentencing court's factfinding duty under Rule 32. 29 F.3d at 911. We noted that Walker filed several written, specific objections, even though at argument his counsel did not explicitly challenge the PSR's recommendation regarding acceptance of responsibility. <u>Id.</u> at 912. We held that it was Walker's prior "specific objections to the factual findings underlying the PSR's recommendation" that triggered the sentencing court's factfinding duties under Rule 32, not counsel's arguments at resentencing. <u>Id.</u> Here, our specific remand instructions
(Continued)

The district court's oral remarks at resentencing on April 25, 2008, do not provide a sufficient basis for us to hold that a week later, when the court adopted Chandia's PSR in toto "without change," the court intended "to rule on each of [Chandia's] alleged factual inaccuracies." Walker, 29 F.3d at 911. The district court did not mention the substance of the PSR in its remarks at resentencing; after a week passed, on May 2, 2008, the court simply adopted the PSR in toto in its Statement of Reasons form attached to the judgment. J.A. 648. We cannot call this a Rule 32(i)(3) determination, given the PSR's lack of discussion on the terrorism enhancement. Although the district court may adopt the PSR's findings, it must "make clear on the record that it has made an independent finding and that its finding coincides with the recommended finding in the presentence report." Morgan, 942 F.2d at 245 (emphasis added). This means that the court must indicate that it has considered Chandia's objections to the PSR and rejected them, or that a given objection will not affect sentencing. The court must then explain how its resolution of Chandia's objections affects its conclusion on whether Chandia provided material support with the

coupled with defense counsel's reference to Chandia's previously filed objections put the district court on notice at resentencing that it had to resolve those objections in a way that complied with Rule 32(i)(3).

14

intent to retaliate against government conduct, or to influence the government's conduct by intimidation or coercion.

For example, Chandia objected to paragraph 100 of the PSR, which asserted that in February 2002 Chandia transported Mohammed Khan to Khwaja Hasan's residence and that Khan told Hasan in Chandia's presence that he was in the United States on LET business. J.A. 606. Chandia maintained that Hasan did not testify that Khan stated that he was in the United States on LET business. J.A. 360. The probation officer reported the government's response: the trial transcript, which was unavailable when the PSR was prepared, would be necessary to resolve the controversy. J.A. 639. The transcript, now available, reveals that Hasan testified as follows: he knew Khan was associated with LET, and he assumed Khan was in the United States on LET business. J.A. 246, 248. Hasan did not testify that Khan said in Chandia's presence that Khan was in the United States on LET business. Hasan conceded that Khan did not indicate to Hasan his purpose for being in the United States, nor did Hasan speculate on Khan's purpose in Chandia's presence. J.A. 275. Although the district court characterized Khan as a known LET leader, whether Khan was a known LET leader to Chandia may bear on whether Chandia provided material support with the intent to retaliate against government conduct, or to affect the government's conduct by intimidation or coercion. We are not

15

foreclosing the possibility that Chandia knew Khan was a LET leader when he assisted him, but the district court must resolve the dispute and indicate how the resolution affects its determination regarding Chandia's motive for providing support.

Chandia also objected to the PSR's description of LET as an organization whose "primary" focus is "conducting violent jihad against the Government of India." J.A. 593. Chandia contended that LET is a popular organization in Pakistan that operates schools and hospitals and provides vocational training. Which of LET's purposes Chandia intended to serve by providing material support is relevant to the terrorism issue. J.A. 356. At resentencing the district court underscored that Chandia "clearly knew" of LET's purpose and "was clearly involved in assisting it." J.A. 573. Indeed, Chandia's knowledge of LET's terrorism-related purpose was necessary to his conviction for providing material support to a designated terrorist organization under 18 U.S.C. § 2339B. A conviction under § 2339B requires the government to prove the defendant's "knowledge that the organization is a designated terrorist organization, that the organization has engaged or engages in

16

terrorist activity, or that the organization has engaged or engages in terrorism." 18 U.S.C. 2339B(a)(1).[4]

Chandia's knowledge of LET's terrorist purposes was thus part of his conviction, but it does not alone show that he had the intent required for the terrorism enhancement. The government failed to prove that he attended a LET military training camp while in Pakistan. Chandia, 514 F.3d at 370. Chandia objected to the PSR's allegation that he discussed with Kwon the training and gear requirements at the LET camp. J.A. 360, 605. Kwon testified, however, that this discussion occurred. J.A. 122-23. The district court should resolve this factual dispute and explain whether the resolution leaves motives attributable to Chandia under the terrorism enhancement.

We have provided guidance on what sort of intent justifies that enhancement for a material support crime. See United States v. Hammoud, 381 F.3d 316, 356 (4th Cir. 2004)(upholding district court's application of § 3A1.4 terrorism enhancement where defendant had "close connections with Hizballah officials" and his own testimony indicated that

---

[4] The Supreme Court recently upheld the constitutionality of § 2339B against a First Amendment challenge. Holder v. Humanitarian Law Project, 130 S. Ct. 2705 (2010). The Court rested its holding in part on the statute's mental state component, requiring that the defendant have knowledge that the organization receiving material support is a designated terrorist organization.

he was "well aware of Hizballah's terrorist activities and goals and that he personally supported this aspect of Hizballah" (emphases added)), vacated on other grounds, 543 U.S. 1097 (2005); United States v. Benkahla, 530 F.3d 300, 313 (4th Cir. 2008) (holding that enhancement was proper because defendant "attended a jihadist training camp abroad, was acquainted with a network of people involved in violent jihad and terrorism, and lied about both"; distinguishing Chandia on the ground that the district court made "extensive factual findings" and appropriately applied the enhancement to serve its purpose of punishing defendants "more harshly" when their "wrongs served an end more terrible than other crimes").

Based on our review of the record and the district court's analysis to date, we are not comfortable holding that Chandia is a defendant who warrants the harsh enhancement. The district court began resentencing by reciting the two elements required to apply the terrorism enhancement. J.A. 572. In its subsequent recitation of facts that would support the enhancement, however, it appears to have applied the wrong legal standard by equating intent with knowledge.

The facts that the district court relied upon essentially restate the facts underlying Chandia's material support conviction, without explaining how these facts speak to Chandia's motive for providing the support. The court concluded

18

that Chandia "clearly knew" that LET had terrorist purposes and that he was "clearly involved in assisting" LET.  J.A. 573.  But Chandia's knowledge of LET's purpose was part of his conviction and that does not automatically yield an inference of the specific intent required for the enhancement to apply.

On remand, the district court must make clear that it has made independent findings in response to Chandia's objections to the PSR.  If it again finds application of the enhancement warranted, it must explain how specific facts indicate that his motive in providing material support was to influence or affect government conduct by intimidation or coercion, or to retaliate against government conduct.

### III.

For the foregoing reasons, we vacate Chandia's sentence and remand for resentencing in accordance with this opinion.

VACATED AND REMANDED